Filed 11/19/20  Yannoulatos v. Superior Court CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| JOHN YANNOULATOS et al., <br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br> Respondents, <br><br> RALPHS GROCERY COMPANY, <br> Real Party in Interest. | B306989 <br><br> (Los Angeles County <br> Super. Ct. Nos. BC632679, 20STCV04200) |

ORIGINAL PROCEEDINGS in mandate.  Patricia Nieto, Judge.  Petition granted, alternative writ discharged.

Law Office of Michael V. Jehdian and Michael V. Jehdian; Knapp, Petersen & Clarke, K.L. Myles, Andre E. Jardini for Petitioners.

No appearance for Respondent Superior Court of Los Angeles.

Morrison & Foerster, Tritia M. Murata, Wendy J. Ray,

Karen J. Kubin, James R. Sigel for Real Parties in Interest.

Petitioner Jill LaFace filed a representative action under the Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA) against her employer, real party in interest Ralphs Grocery Co. (Ralphs), alleging that Ralphs failed to provide suitable seating for its checkstand cashiers. Following a bench trial, the court found in favor of Ralphs.

After trial, but prior to entry of judgment in that case, LaFace and petitioner John Yannoulatos filed a second PAGA action against Ralphs, alleging that Ralphs failed to provide seating for employees working in the self-checkout area. The second action was deemed related to the first and reassigned to the same judge. Petitioners filed a peremptory challenge to the trial judge pursuant to Code of Civil Procedure section 170.6.[1] The respondent court struck the challenge as untimely on the grounds that the second action was identical to, and therefore a continuation of, the first action.

LaFace and Yannoulatos petitioned for an extraordinary writ of mandate directing the trial court to vacate its order. They contend that the second lawsuit includes an additional plaintiff (Yannoulatos), covers a different time period, and focuses on the failure to provide seating for self-checkout attendants, a claim never alleged in the first lawsuit. Ralphs argues that petitioners' claim regarding self-checkout cashiers was subsumed within LaFace's allegations in the first lawsuit regarding checkstand cashiers, and therefore that the second lawsuit is merely a continuation of the first. We find no evidence to support Ralphs'

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

contention that LaFace asserted, and then abandoned, a claim covering self-checkout attendants in the first lawsuit. Thus, we conclude that the trial court erred by striking the peremptory challenge based on a finding that the second case was a continuation of the first one. We therefore grant the petition.

**FACTUAL AND PROCEDURAL HISTORY**

I.    *LaFace Action*

LaFace filed the first lawsuit, case number BC632679, against Ralphs in September 2016 (*LaFace*). Ralphs operates a grocery store chain in California. LaFace worked as a "checker and/or cashier" in a Ralphs store. LaFace brought a representative action under PAGA, alleging a single cause of action contending Ralphs violated Industrial Wage Commission (IWC) Wage Order No. 7, section 14(A), by failing to provide suitable seats to LaFace "and other checkers and/or cashiers." She further alleged that the "cubicle area is sufficiently spacious to provide adequate room to provide a seat for a checker and/or cashier." LaFace sought civil penalties under PAGA on behalf of herself and other "checkers and/or cashiers" working at Ralphs.

In initial discovery, the parties adduced some evidence regarding the different types of checkout locations. For example, in interrogatory responses served in June 2017, Ralphs stated that its stores had "multiple types of checkstands, with differing locations, configurations, and dimensions." The store where LaFace worked had "seven checkstands with an incoming conveyor belt that is in-line with a scanner and an outgoing conveyor," as well as "a self-checkout area with four checkstands where customers can scan and bag their own items. The cashier in this self-checkout area has an override station where they have a cash box and access to the transactions that are occurring

3

on each self-checkout register." Both types of checkstands were located at the "front-end" of the store. Ralphs also produced schematics for its self-check machines.

In addition, Ralphs responded that in an ordinary customer transaction at a checkstand, the cashier's duties included scanning or weighing the items placed on the conveyor belt, then passing the items to the bagging area, ringing up the purchase, and often bagging items for the customer. Ralphs stated that it did not provide seating in the checkstands because of the "cashier's dynamic work," "the limited space within the checkstand for a seat," and the fact that "the space behind the cashier's area is often a passage way for the customers being serviced at the next checkstand."

In response to questions by Ralphs' counsel at her deposition in May 2017, LaFace testified that she sometimes worked as a cashier supervising the self-checkout stations, which differed from the job of someone working at one of the registers. She explained that the cashier overseeing the self-checkout stations was responsible for helping customers who needed assistance with the self-checkout machines. LaFace also agreed that the cashier at the self-checkout station would have nowhere to put a chair, because it could get in the way of customers and the cashier needed to be able to walk among the four self-checkout stations.

At a case management conference on August 17, 2017, the court had the following exchange with LaFace's counsel:
Court:

"Are we talking about only cashiers who are working regular registers?

"Mr. Jardini [plaintiff's counsel]: Yes, your honor, we are.

4

Court:  So we're not talking about cashiers who are assisting people at the self serve checkout sort of things?

"Mr. Jardini:  No . . . .  That person actually has to be serving five or six, eight, I don't know, however many stations. So that person cannot have a chair, I don't believe."

The court's minute order from the hearing memorialized this statement that the case would deal "only with regular cashiers, not self-serve attendants."

Subsequently, the parties' discovery excluded the self-checkout area.  Ralphs objected in its later written discovery responses to the definitions of "workstation" and "checkstand," "to the extent [they] include[d] self-checkout lanes," and expressly limited its responses to include front-end checkstands and exclude self-checkout areas.  LaFace's expert conducted site inspections at Ralphs' stores, which expressly excluded inspection of self-check registers.

The case culminated in a 13-day bench trial before the Honorable Patricia Nieto, between November 12, 2019 and January 6, 2020.  LaFace and fellow longtime cashier Yannoulatos testified during trial.  It is undisputed that the parties did not present evidence at trial regarding the self-checkout area.

 The court issued a lengthy statement of decision on March 20, 2020, finding in favor of Ralphs and against LaFace.  Relying on the factors set forth in *Kilby v. CVS Pharmacy, Inc.* (2016) 63 Cal.4th 1 (*Kilby*), the court concluded that LaFace failed to meet her burden "to show that the nature of the work of Ralphs cashiers reasonably permits the use of seats."  Specifically, the court found that "throughout the time they are checking out customer orders, Ralphs cashiers engage in continuous dynamic

5

movement. They are scanning, reaching, pulling, pushing, bagging, handling items, accepting payment, moving in and around the checkstands, and exiting the checkstands, among other things." The court also cited evidence that cashiers "constantly move in and around" the cashier well, handle and lift heavy items, bag groceries, either inside the cashier well or at the back of the checkstand, and leave their checkstands for various reasons. When not assisting customers, cashiers had other duties at their checkstands and around the store.

The court cited testimony of Ralphs' expert, Dr. Fernandez, that cashiers "continuously engage in extended reaches while checking out customer orders," including reaching to retrieve items coming down the incoming conveyor belt and sorting items on the outgoing belt. The court relied on Dr. Fernandez's "robust quantitative analysis and qualitative assessment of the nature of the work of Ralphs cashiers and the physical layout of the Front End checkstand configurations." The court found that "the evidence presented by Ralphs was overwhelming with respect to the physical layout of the front-end checkstands and the fact that they cannot reasonably accommodate a seated cashier."

The court entered judgment for Ralphs on March 20, 2020. LaFace filed a notice of appeal on April 1, 2020. That appeal is currently pending.

## II.    *Yannoulatos Action*

On January 31, 2020, after trial in *LaFace* had concluded but before the court issued its statement of decision, LaFace and Yannoulatos filed a second PAGA action against Ralphs (case number 20STCV4200) (*Yannoulatos*).[2] The complaint again

_____

[2]Petitioners filed their PAGA notice letter on October 24,

6

alleged a single cause of action contending Ralphs violated IWC Wage Order No. 7, section 14(A). This time, petitioners alleged that Ralphs failed to provide suitable seats for "plaintiffs and other similarly situated self-checkout attendants." In their complaint, petitioners sought civil penalties under PAGA on behalf of themselves and other cashiers working at self-checkout stations.

Ralphs filed a notice of related cases pursuant to California Rules of Court, rule 3.300 in April 2020. LaFace objected, contending that the cases were not related. On June 30, 2020, the court issued a minute order finding that the cases were related and transferring *Yannoulatos* to Judge Nieto.

On July 9, 2020, petitioners filed a peremptory challenge under section 170.6. Ralphs opposed, arguing that *Yannoulatos* was a continuation of *LaFace* and involved "contested factual issues on which Judge Nieto has already ruled and made material factual findings." Ralphs further argued that petitioners were attempting to resurrect a claim regarding the feasibility of seats for self-checkout cashiers that "they consciously, deliberately abandoned" in the first case. It pointed to its discovery responses in *LaFace* that included information about the self-checkout area and deposition testimony of Ralphs' employees as evidence that "the self-checkout register is just another type of front-end register where Ralphs cashiers work."

_____

2019, prior to the start of trial in *LaFace*. Pursuant to Labor Code section 2699.3, an employee must give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency, and the notice must describe facts and theories supporting the violation. (§ 2699.3, subd. (a).)

Ralphs also contended that LaFace and her counsel admitted during the first case that a cashier working at a self-checkout station would have nowhere to put a chair. Ralphs acknowledged that LaFace's ergonomics expert did not inspect any self-checkout stations during discovery, but contended that she never requested such access. Thus, Ralphs argued that the court should deny the peremptory challenge because *Yannoulatos*[3] was a continuation of prior proceedings in *LaFace*, and in *LaFace*, the court had ruled on "contested fact issues relevant to" *Yannoulatos*.

Petitioners replied, arguing that *Yannoulatos* focused exclusively on seating at the self-checkout stations, that no claims were made in *LaFace* regarding self-checkout seating, and all the evidence at trial in *LaFace* focused on the regular, front-end checkstands. As such, they contended that the two cases were distinct from each other.

The court denied the peremptory challenge on July 29, 2020. The court found that (1) *Yannoulatos* was "a continuation of prior proceedings before this Court" in *LaFace*; and (2) in *LaFace*, "this Court ruled on contested fact issues relevant to [*Yannoulatos*]." First, the court found that both actions "involve the same parties," because LaFace was a named plaintiff in both actions, Yannoulatos was a named plaintiff in *Yannoulatos* and an "allegedly aggrieved cashier" in *LaFace*, and both actions were

_____

[3]In its opposition to the peremptory challenge, Ralphs referred to the two lawsuits at *LaFace I* and *LaFace II*. The trial court adopted this naming convention in its order denying the peremptory challenge. While we reject petitioners' unsupported assertion that doing so was improper, for clarity, we refer to the actions as *LaFace* and *Yannoulatos*.

8

brought against Ralphs. The court also found that petitioners "sued in their representative capacities on behalf of the same group of allegedly aggrieved employees." The court characterized *LaFace* as a PAGA action "brought on behalf of all allegedly aggrieved employees who worked for Ralphs as checkers and/or cashiers at front-end checkstand locations in California," with potential penalties running from June 28, 2015. The court described *Yannoulatos* as a PAGA action "brought on behalf of all allegedly aggrieved employees who worked for Ralphs at self-checkout stations (one type of front-end checkstand location)," with potential penalties running from November 27, 2018. Thus, the court concluded that "because LaFace is a named plaintiff (represented by the same counsel) in both cases, and the group of allegedly aggrieved employees in *LaFace* . . . subsumes the allegedly aggrieved employees in [*Yannoulatos*], the parties in both actions are identical."

The court also found that *Yannoulatos* "arises out of conduct in and orders arising out of *LaFace*. . . . Both cases involve the question of whether the nature of the work of Ralphs cashiers reasonably permits the use of seats in or at the front-end checkstand locations at Ralphs stores." Therefore, the court concluded that both cases involved "the same parties and questions of fact and law."

Petitioners timely filed this petition for writ of mandate directing the trial court to vacate its order and accept their peremptory challenge against Judge Nieto.[4] We issued an

---

[4]An order granting or denying a peremptory challenge is not an appealable order and may be reviewed only by way of a petition for writ of mandate filed within 10 days of notice to the

9

alternative writ, ordering the trial court to vacate its order and enter a new order accepting the peremptory challenge, or to show cause why a peremptory writ requiring it to do so should not issue. After the trial court declined to vacate its order, Ralphs filed a written return to the petition and petitioners filed a reply.

## DISCUSSION

### I. *Standard of Review*

We review the denial of a peremptory challenge for an abuse of discretion. (*Grant v. Superior Court* (2001) 90 Cal.App.4th 518, 523; see also *Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1315.) Petitioners argue that the independent standard of review applies in instances, such as this case, where "proper application of the disqualification statute turns on undisputed facts." (*Pickett v. Superior Court* (2012) 203 Cal.App.4th 887, 892 (*Pickett*), citing *Swift v. Superior Court* (2009) 172 Cal.App.4th 878, 882.) However, the central dispute here is a factual one—whether LaFace raised a claim regarding self-checkout workstations as part of the first lawsuit. Under either standard, we would conclude that the trial court erred in denying the peremptory challenge.

### II. *Peremptory Challenge and the Continuation Rule*

Section 170.6 permits summary disqualification of an assigned judge upon a timely peremptory challenge. (§ 170.6, subd. (a).) If a peremptory challenge pursuant to section 170.6 is raised in a timely manner, a trial court must accept it without further inquiry. (*Stephens v. Superior Court* (2002) 96 Cal.App.4th 54, 59.) "The right to exercise a peremptory challenge under Code of Civil Procedure section 170.6 is a

parties of the decision. (170.3, subd. (d).)

10

substantial right and an important part of California's system of due process that promotes fair and impartial trials and confidence in the judiciary." (*National Financial Lending, LLC v. Superior Court* (2013) 222 Cal.App.4th 262, 270.) "As a remedial statute, section 170.6 is to be liberally construed in favor of allowing a peremptory challenge, and a challenge should be denied only if the statute absolutely forbids it." (*Ibid.*, citing *Stephens v. Superior Court*, *supra*, 96 Cal.App.4th at pp. 61-62.)

A party is only allowed one such challenge per action. (§ 170.6, subd. (a)(4).)  In addition, this peremptory challenge must be made within 10 days after notice of an all purpose assignment to that judge.  (§ 170.6, subd. (a)(2).)  This single challenge rule also applies where a separate proceeding is merely a "continuation of the original action out of which it arises and it involves 'substantially the same issues' as the original action." (*McClenny v. Superior Court* (1964) 60 Cal.2d 677, 684 (*McClenny*); see *Jacobs v. Superior Court* (1959) 53 Cal.2d 187, 190 (*Jacobs*).)  Thus, because the trial court here deemed *Yannoulatos*  a continuation of *LaFace*, it found the peremptory challenge filed in the latter action untimely.

To conclude that one action is a continuation of another requires more than a simple determination that the two actions involve similar parties litigating similar claims.  (*NutraGenetics, LLC v. Superior Court* (2009) 179 Cal.App.4th 243, 258 (*NutraGenetics*); *Bravo v. Superior Court* (2007) 149 Cal.App.4th 1489, 1494 (*Bravo*).)  Rather, there must be a subsequent proceeding, the gravamen of which is rooted in, or supplementary to, the initial proceeding.  (*NutraGenetics, supra*, 179 Cal.App.4th at pp. 252–257.)  The second proceeding must involve "the same parties at a later stage of their litigation with each other, or . . .

11

arise out of conduct in or orders made during the earlier proceeding." (*Id.* at p. 257, italics omitted; see also *Pickett, supra,* 203 Cal.App.4th at p. 893.)

Thus, for example, courts have found the following matters to be a continuation of an earlier, pending matter: a petition to modify a child custody order in earlier proceedings (*Jacobs, supra*, 53 Cal.2d at p. 190); a contempt proceeding occasioned by a husband's violation of visitation and receivership orders in divorce proceedings (*McClenny, supra*, 60 Cal.2d at pp. 678–679, 684); and a criminal matter in which the prosecutor dismissed the first action after unfavorable pretrial rulings, refiled the same charges under a new case number, and there was "clear evidence of the District Attorney's singular intent to avoid an unfavorable ruling in the prior proceeding" (*Birts v. Superior Court* (2018) 22 Cal.App.5th 53, 60.)

By contrast, in *NutraGenetics, supra*, 179 Cal.App.4th 243, the plaintiff filed an action against individual defendants who induced him to invest in a company. When faced with a motion to compel arbitration and stay the litigation, the plaintiff filed a second action against the company itself, raising some similar and some new claims based on the same alleged misconduct. (*Id.* at pp. 247-248.) The court held that the trial judge properly disqualified herself pursuant to peremptory challenge because the second action was not a continuation of the first. (*Ibid.*)

The *NutraGenetics* court reasoned that although the plaintiffs were identical, and the wrongful conduct alleged was the same, some defendants and some of the relief sought were different in the second action. (*NutraGenetics, supra*, 179 Cal.App.4th at pp. 258–259.) In addition, the second action did not "arise from conduct in, or involve enforcement or modification

12

of an order in, the first lawsuit." (*Id*. at p. 247.)  Thus, the second action was not a continuation of the first.  (*Ibid*.)  In sum, the court reiterated "the underlying principle of the continuation rule: the second proceeding involves the same parties (on both sides of the case) as the first proceeding, and the second proceeding arises out of the first proceeding, not just out of the same set of facts that gave rise to the first proceeding."  (*Id*. at p. 254.)

Similarly, in *Bravo, supra*, 149 Cal.App.4th at p. 1489, a plaintiff whose first complaint for employment discrimination was dismissed immediately filed a second complaint against the same defendant, again alleging employment discrimination claims.  The court found the second action was not a continuation of the first, because the second complaint addressed discrimination on dates subsequent to those described in the first complaint.  (*Id*. at p. 1494.)  Nor were two cases considered continuations of a third when three plaintiffs filed three actions suing the same defendant for the same manufacturing defect, but "aris[ing] out of different injuries and damages, occurring in automobile accidents involving different vehicles at different times and places, and under different fact patterns" in each of their vehicles.  (*Nissan Motor Corp. v. Superior Court* (1992) 6 Cal.App.4th 150, 153–154, 155; see also *Pickett, supra,* 203 Cal.App.4th at p. 894-896 [PAGA action against employer was not a continuation of a related prior action where the named plaintiffs were not identical and the second plaintiff sought additional relief].)

III.  *Analysis*

Ralphs' central contention is that the two actions involved "identical" claims because LaFace included the issue of seating

13

for self-checkout employees in the first lawsuit, but then "abandoned" that claim during discovery. Petitioners counter that *LaFace* focused only on regular checkstands and never "address[ed] the rights of employees who are assigned to the self-checkout station."

The record before us supports petitioners. The *LaFace* complaint alleged a claim on behalf of "checkers and/or cashiers" and further alleged that "the cubicle area" for those employees was "sufficiently spacious to provide adequate room to provide a seat." Similarly, in her pre-filing notice letter, LaFace claimed that the "area where cashier duties are performed—a cubicle with a cash register—is sufficiently large" to accommodate seating. Ralphs offers no explanation for how this description of the covered employees' workstations could be interpreted to include the self-checkout area. Ralphs also points to the evidence that LaFace worked in both areas and acknowledged in her deposition her belief that it would not be feasible to include a chair for self-checkout attendants. Neither of these facts support the contention that she included a claim for self-checkout attendants in her complaint, where it was not otherwise alleged. Further, *Ralphs'* decision in its initial discovery responses to include information regarding multiple types of checkstands, including regular and self-check, does not support its contention that LaFace's claim included self-checkout areas. We have seen no evidence that LaFace propounded discovery in the first action targeted at self-checkout attendants. Notably, when detailing cashier duties and discussing the feasibility of seating, Ralphs limited its responses to regular checkstands.

Moreover, when asked about the scope of the case at the case management conference, LaFace's counsel responded that

14

self-checkout areas were not part of LaFace's claims. Ralphs' suggestion that the court asked whether LaFace "would continue to pursue" a claim regarding self-checkout areas, and that LaFace's subsequent "abandonment" of that claim was memorialized in the court's minute order is, at best, inaccurate, if not misleading. Consequently, we find no evidence to support Ralphs' claim that LaFace asserted and then abandoned a claim regarding self-checkout areas in the first lawsuit.

In seeming contradiction to its argument that LaFace abandoned her self-checkout claim prior to trial in *LaFace*, Ralphs also argues that the trial court's statement of decision properly included self-checkout areas as a type of front-end checkstand. As such, it contends the trial court was within its discretion to find that the claims in *Yannoulatos* were subsumed within the claims in *LaFace*, and therefore the second case was a continuation of the first one. We disagree.

First, we find no support in the record for the trial court's finding that the parties in both actions were identical. *LaFace* involved one named plaintiff against Ralphs, while *Yannoulatos* involved two plaintiffs. Further, there is no evidence in the record before us supporting the court's conclusion that the "group of allegedly aggrieved employees in *LaFace* . . . subsumes the allegedly aggrieved employees" in *Yannoulatos*. Although it appears undisputed that a self-checkout attendant is a type of cashier, and that at least some cashiers, including LaFace, worked at both types of checkstands, there is no evidence that all cashiers did so. We find no evidence supporting the implication that the group of employees covered under *Yannoulatos* (self-checkout attendants beginning in November 2018) was identical to the group covered under LaFace (regular checkstand cashiers

15

beginning in June 2015). Notably, although the trial court recognized the differing time frames of the two complaints, both Ralphs and the court ignored the issue in their analyses. (See *Bravo, supra,* 149 Cal.App.4th at p. 1494 ["although the two cases involve the same employee and the same employer, the current action arises out of later events distinct from those in the previous action," and thus was not a continuation of the previous action].)

Second, the cases did not involve the same claim. The complaints alleged different harms, which the trial court acknowledged when describing the cases but rejected by claiming that self-checkout stations were a "type of front-end checkstand locations." Whether or not the self-checkout stations are properly defined as a type of front-end checkstand, the parties did not present evidence regarding self-checkout stations at trial in *LaFace.* Ralphs has not pointed to any testimony or evidence about the layout of the self-checkout area, the duties of the self-checkout attendant, the actions they perform in a typical shift, or the feasibility of placing a seat in that part of the store. Indeed, LaFace's expert did not inspect the self-checkout area and her attorney expressly declined to question Ralphs' expert about that issue at trial, noting that he had "also looked at self-check, but we're not going to ask you about that."

As such, there was no evidence from which the court could reach any conclusions about the feasibility of seating for self-checkout attendants. The court's denial of the peremptory challenge based on the finding that both cases involved the same issue of feasibility was an abuse of discretion.

We also disagree with Ralphs that the trial court properly denied the peremptory challenge because in *LaFace* it "resolved a

number of contested factual issues that are material to—if not dispositive of—the merits of Petitioners' subsequent action." The trial court found that both cases involved the same "questions of fact and law," because both cases turned on "the question of whether the nature of the work of Ralphs cashiers reasonably permits the use of seats in or at the front-end checkstand locations at Ralphs stores." Ralphs further contends, without support, that the court's factual findings about the work of Ralphs' cashiers "hold true regardless of which particular task they are performing—working in an employee-run checkstand or overseeing the self-checkout area." This argument and the trial court's conclusions lack any basis in the record. It is undisputed that there was no evidence specific to self-checkout at trial.

Moreover, we are not persuaded that the court's findings in *LaFace* regarding cashiers—such as that they are "never idle" and that the dynamic nature of their work did not reasonably permit the use of seats—would be applicable to petitioners' allegations in *Yannoulatos* regarding self-checkout attendants. The court's findings relied on the specific nature of the work performed by a cashier at a regular checkstand, including the need for the cashier to move items down the conveyor belt and bag groceries, as well as the constraints of the physical layout of the cashier well. In reaching these findings, the court relied heavily on Ralphs' expert, whose testimony focused on regular checkstands and the activities of cashiers working there. None of these findings would apply to petitioners' claims regarding self-checkout attendants.

Whether the court might ultimately reach the same conclusion for self-checkout attendants, based on the same or similar factors, does not mean that the court in *LaFace* resolved

17

factual issues applicable to *Yannoulatos*.[5]  As the trial court recognized, a determination whether the "nature of the work reasonably permits the use of seats" requires the court to consider the "nature of the work" and the "total tasks and duties by location."  (*Kilby, supra,*63 Cal.4th at pp. 18-19.)  Thus, the court in *Yannoulatos* would have to consider evidence specific to the nature of the work performed by self-checkout attendants and the layout of that workstation.

In sum, the evidence supports the conclusion that the two cases involved similar issues arising from a similar set of facts. That is insufficient to deem *Yannoulatos* a continuation of *LaFace*.  (See *NutraGenetics, supra*, 179 Cal.App.4th at p. 257 ["the second proceeding must arise out of the first proceeding— not merely . . . out of the same incidents or events that gave rise to the first proceeding"].)  They are therefore "separate and distinct cases, entitled to separate challenges under section 170.6."  (*Nissan, supra*, 6 Cal.App.4th at p. 155.)  The trial court's denial of the peremptory challenge because *Yannoulatos* was a continuation of *LaFace* was therefore an abuse of its discretion.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of July 29, 2020 denying

---

[5]Similarly, whether petitioners' claims regarding self-checkout seating are meritless, as Ralphs contends, is irrelevant to the issue before us.  (See *NutraGenetics, supra*, 179 Cal.App.4th at pp. 259-260 [The defendant's contention that the second complaint was a "sham pleading" and its filing a "flagrant example of judge shopping" played "little if any part in analyzing whether [the plaintiff's] disqualification motion was timely under the continuation rule."].)

petitioners' peremptory challenge, and enter a new order granting the challenge.  The alternative writ is discharged. Petitioners are entitled to recover their costs in this proceeding.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J.


WILLHITE, J.